# Pennsylvania Railroad Company, Plff. in Err., *v.* George Page.

A railroad company is not liable for fires caused by sparks emitted from an engine, if the engine was provided with a spark arrester proved to be the best known, and in use upon a majority of all the locomotives in this country.

In an action brought against a railroad company to recover damages for a fire alleged to have been caused by sparks emitted from an engine on defendant's road, due to a defective spark arrester, evidence is inadmissible to show that the defendant company was in the habit of refusing to adopt certain appliances to modify the discharge of smoke from locomotives, which could be had by paying for them; and that because these appliances were patented the defendant refused to pay a bonus for their use, but when the patents expired, it would adopt them into general use.

In such an action it seems that evidence is admissible to show generally the effect of wind upon smoke, and as to how far wind would carry sparks, without limiting the witness to the conditions of the particular case in which suit is brought.

It seems also that if the action is brought by the owner of the property burned, the plaintiff cannot be required to testify as to whether or not he had received any insurance on account of his loss.

When, in an action for negligence, the plaintiff has recovered a verdict, although the supreme court is of opinion that there is no evidence of negligence on the part of the defendant, it will not reverse on that account, unless the court was asked to give a binding instruction on the whole testimony.

(Argued January 23, 1888. Decided February 20, 1888.)

July Term, 1887, No. 163, E. D., before GORDON, Ch. J., PAXSON, GREEN, CLARK, and WILLIAMS, JJ. Error to Common Pleas No. 3 of Philadelphia County to review a judgment

Cited in Henderson v. Philadelphia & R. R. Co. 144 Pa. 461, 483, 16 L. R. A. 299, 27 Am. St. Rep. 652, 22 Atl. 851.

NOTE.—See note to Gowen v. Glaser, 2 Sad. Rep. 250. Also Stephenson v. Pennsylvania R. Co. 20 Pa. Super. Ct. 157.

For a review of the authorities as to liability of railroad companies for causing fires, see the following editorial notes: Fires on railroad right of way, note to Marvin v. Chicago, M. & St. P. R. Co. 11 L. R. A. 506; presumption as to negligence in case of railway fires, note to Barnowski v. Helson, 15 L. R. A. 40; constitutionality of statute imposing absolute liability for, note to Matthews v. St. Louis & S. F. R. Co. 25 L. R. A. 161.

entered on a verdict for the plaintiff in an action on the case. Reversed.

This was an action brought by George Page against the Pennsylvania Railroad Company, to recover the value of a barn and its contents, alleged to have been burned by a spark from a locomotive belonging to the defendant railroad.

The facts of the case were as follows:

The declaration alleged that defendant did not manage and control nor run the said trains of cars with care and vigilance, and did not provide the said locomotives with any proper or adequate spark appliances, so that the said barn of plaintiff's was fired by sparks of fire from one of the said locomotives by reason of the said negligence of the defendant.

The evidence proved that the plaintiff's barn was burned between 2:30 and 3 o'clock in the afternoon of October 17, 1886; that very shortly prior to the fire several trains had passed on the defendant's track, the last about ten or fifteen minutes prior to the fire; that the engines of these trains had emitted a great deal of smoke; that this smoke was carried directly to the house, and that the fire originated in the roof of the barn on the side toward the railroad.

It was further alleged that the engines were not equipped with a proper spark arrester.

One witness testified that he saw, in this smoke, cinders or sparks about the size of a grain of shot or a pea. Another witness said in answer to the question whether he saw any sparks: "No, sir; you could not see any in the daytime. You would feel them fall down on you as they go past you; if you were close to them you could not see them, of course, in the daytime."

There was, however, uncontroverted evidence that the spark arrester used by these engines is used by a majority of all the locomotive engines in this country. The inventor testified that it was impossible that sparks that would ignite anything could pass through these spark arresters. The inspectors of the railroad company testified that the spark arresters and ash pans were in good condition.

During the progress of the trial the plaintiff was interrogated by the defendant's counsel as follows:

*Q.* Did you have any insurance on the barn?

*A.* Yes, sir.

*Q.* Did you get the insurance?

(Objected to by plaintiff. Objection sustained. Exception.) [1]

W. E. Lockwood, a witness for the plaintiff, testified as follows:

*Q.* What am I to understand you to say? Because I am in some doubt about the last part of your sentence. What do I understand you to say is emitted—what are the things that are emitted when this smoke comes through the smoke stack?

(Objected to. Objection overruled. Exception.)

*A.* Both sparks and smoke.

*Q.* What is the appearance?

*A.* The smoke is a powder, which settles upon foliage and upon water where it is smooth, which you can scrape off; and sparks you couldn't begin to carry that distance. They are a different thing, and fall of their own gravity.

*Q.* But the whole thing comes out, as I understand you, in this volume of smoke?

*A.* Yes, sir; from the smoke stack of the locomotive.

*Q.* What is the effect of the wind on that volume of smoke which comes out?

(Objected to. Objection overruled. Exception.)

*A.* It carries it long distances.

*Q.* Do you include sparks when you say that?

*A.* I include them for a considerable distance. [2]

The same witness testified as follows:

*Q.* Can you state the distance which a wind to your knowledge has been known to carry sparks?

(Objected to, except as to the wind on this day and sparks from these particular engines at this particular place. Objection overruled. Exception.)

*A.* Sparks at least 300 feet, to my knowledge, and the smoke about 650, where it settled and made a deposit. [3]

W. B. Levan, a witness for the plaintiff, testified as follows:

*Q.* What is the effect of the wind upon such a substance or conglomeration?

(Objected to. Objection overruled. Exception.)

*A.* They would be carried a greater or less distance, according to the character and velocity of the wind at the time and the condition of the atmosphere. In certain atmospheres, a light

wind would carry them a long distance, and under certain other conditions only a short distance, even with the same velocity of air. Buoyancy depends a good deal upon the condition of the atmosphere.

*Q.* I suppose that the distance carried is dependent largely also upon the weight of the substance itself?

*A.* Yes; and on the velocity of the wind also. As I said before, under certain conditions of the atmosphere, a very light wind would waft it off a long distance, say 1,000 yards, and under certain circumstances the same wind would only send it 300 yards under other conditions. The atmosphere controls that. [4]

The same witness testified as follows:

*Q.* How far have you known sparks to be carried under those conditions?

(Objected to. Objection overruled. Exception.)

*A.* I have seen sparks from bituminous coal go at least 1,000 yards.

*Q.* Do you mean live sparks?

*A.* Yes, sir; in the night time you could see them. In the daytime they would not be visible to the eye. [5]

Counsel for plaintiff offered to show by the same witness, upon reading to him the evidence, heretofore given in the cause, of the running of the engine on this occasion, that it was improperly run. Neither of these witnesses had charge of the locomotive, and both were three quarters of a mile away.

(Objected to. Objection overruled. Exception.)

*Q.* I read to you the testimony of Mr. James Magill, heretofore given in this cause, p. 56; and also read to you the testimony of Thomas Dorsey, p. 62 (reading same). State whether or not, assuming that testimony to be true, you are able to say that the engines there described were properly run.

(Objected to. Objection overruled. Exception.)

*A.* There is no doubt they were properly run. The question of sparks and cinders is not a question of running. It is a question of firing, and one of arrangements for arresting the sparks and arrangements for consuming of the particles by combustion.

*A.* Are you able to say whether or not the engines there described; assuming the testimony which I have read to you to be true, were properly fired and managed at that time?

(Objected to unless the witness has knowledge of the engine and its construction. Objection overruled. Exception.)

*A.* In my opinion I think there could be a great improvement in the management of all their locomotives.

(Objected to.)

By the Court: You must confine yourself to the testimony which you have heard and to the time and circumstance. You may answer generally, and then give any explanation which you yourself or either of the counsel may desire.

*A.* There is no doubt the train was run properly as they are ordinarily run, but——

(Objected to.)

By the Court: It must be an explanation of the answer if he makes an explanation.

*Q.* Explain your answer.

By defendant's counsel: I object to anything further.

*Q.* You were about to explain, were you not?

*A.* Yes, sir.

By the Court: The witness is allowed to explain his answer if he desires to do so.

(Exception.)

*A.* I would like to say in explanation of my answer that the Pennsylvania Railroad is very liberal, and allows outside people like myself to have all the information of what they are doing. As regards the general management of a railroad, they stand second to none in this country; but there are certain appliances that they refuse to adopt which would modify very materially the amount of smoke that is emitted from their locomotives, and which can be had for the paying for it; but, as they are patented, they refuse to pay a bonus to use that apparatus until the time has expired, when they take and use it, and their present locomotives are now using apparatus that were patented for years, and they never used it; but when the patents ran out they adopted them, and they are in general use on their road.

By defendant's counsel: I move that all that statement be stricken out. It is not an answer to anything, nor is it an explanation of anything which has been said.

By the Court: I think it qualifies his answer very much.

By defendant's counsel: Then I ask for an exception.

(Exception sealed.)

*A.* Locomotives can be run without emitting sparks or smoke

if properly constructed.   All sparks that are emitted can be returned to the fire and burned up, and are done so and have been done so.   The refuse from a locomotive which they have thrown away has run a fifty-horse engine to my knowledge, for years. [6]

Verdict and judgment for the plaintiff, for $3,955.60.

The assignments of error specified:   (1–6) The admission and rejection of the evidence above set forth.

The seventh assignment of error was as follows:

"The learned court erred in not peremptorily ordering a verdict for the railroad company on the weight of the evidence, as it showed that the appliances used by the railroad company were the best known, and that they were in use upon nearly 75 per cent of all locomotives in the United States, and that all railroads were adopting the same appliance and altering old locomotives in conformity with it."

*Gavin W. Hart* and *David W. Sellers,* for plaintiff in error.— The insurers can sue the railroad company; and therefore the questions as to the payment of the insurance were admissible. Kennebec Ice & Coal Co. v. Wilmington & N. R. Co. 13 W. N. C. 162, 14 W. N. C. 554.

The assignments of error (2–5) were to the admission of evidence clearly irrelevant.   The questions should have been limited to the conditions of this case.

What is it to the case, if the witnesses saw sparks thrown a mile, unless they were thrown under circumstances like those at the time of this occurrence?

The investigation in this case was limited to the condition of the spark arresters of the locomotives alleged to be in fault, and to these alone.   If these were proper ones and in good order, the railroad company is not liable.   Philadelphia & R. R. Co. v. Yerger, 73 Pa. 121; Erie R. Co. v. Decker, 78 Pa. 293; Jennings v. Pennsylvania R. Co. 93 Pa. 337; Philadelphia & R. R. Co. v. Schultz, 93 Pa. 341; and Reading & C. R. Co. v. Latshaw, 93 Pa. 449; Albert v. Northern C. R. Co. 98 Pa. 316.

The court certainly erred in allowing the witness Levan to ramble off into a tirade against the railroad company as to its not adopting patented appliances.   Under the authorities cited *supra* the railroad company was not guilty of negligence.

*Wm. W. Wiltbanks,* for defendant in error.—The questions as to plaintiff's insurance were irrelevant. The case cited by the plaintiff in error is not in point.

The conclusion is necessarily deduced from the evidence that combustion had been carried, from one of the engines passing, to the barn in the smoke that was carried directly over it. It was therefore proper to show that sparks could be carried in smoke as far as from the train to the barn. So was any evidence that the company did not use the best spark arresters.

It is necessary to infer from all the evidence that the spark arrester was not in good condition. The railroad company was negligent. Lehigh Valley R. Co. v. McKeen, 90 Pa. 122, 35 Am. Rep. 644; Philadelphia & R. R. Co. v. Schultz, 93 Pa. 341.

OPINION BY MR. JUSTICE GREEN:

We are of the opinion that there was no evidence of negligence in this case on the part of the defendant, but we cannot reverse for that reason because the court was not asked to give a binding instruction to the jury on the whole testimony; and it was not error to omit to do what they were not asked to do.

Under the sixth assignment, however, evidence was admitted which, in our opinion, was entirely incompetent, and on that ground we reverse the judgment. We refer to that part of the testimony of W. B. Levan which was offered and admitted under exception as an explanation of his previous answer. After it was all in, the defendant's counsel moved to strike out the objectionable matter, but the court refused to do so, to which defendant excepted. The substance of the testimony thus admitted was that the defendant was in the habit of refusing to adopt certain appliances to modify the discharge of smoke from locomotives, which could be had by paying for them; that because these appliances were patented the defendant refused to pay a bonus for their use, but when the patents expired, it would adopt them into general use.

We are quite at a loss to understand how this evidence could explain anything in the previous answer of the witness or how it could throw any light upon the question whether the spark arrester in use upon the engine which caused the fire in this case was up to the standard of such spark arresters as the defendant was bound to use. The only effect of the testimony that is ap-

parent was to create, or tend to create, a prejudice against the defendant, and that purpose was clearly illegitimate.

The other assignments are not sustained.

Judgment reversed and new *venire* awarded.